O

# United States District Court
# Central District of California

IN RE CITY OF REDONDO BEACH FLSA LITIGATION

Case № 2:17-cv-09097-ODW (SKx)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [32] AND**

**DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [38]**

## I. INTRODUCTION

One hundred and fifteen police officers and fire fighters ("Plaintiffs") sued the City of Redondo Beach ("City") in a collective action under the Fair Labor Standards Act ("FLSA") for alleged miscalculation of overtime compensation. Now before the Court are the City's and Plaintiffs' Cross-Motions for Summary Judgment or Partial Summary Judgment ("Motions"). (City's Mot. for Summ. J. ("City Mot."), ECF No. 32; Pls.' Mot. for Summ. J. ("Pls.' Mot."), ECF No. 38.) For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** the City's Motion and **DENIES** Plaintiffs' Motion.[1]

---

[1] After carefully considering the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

Plaintiffs are fifty-eight police officers and fifty-seven firefighters employed by the City. Plaintiffs contend that the City miscalculated their overtime compensation, in violation of the FLSA. The undisputed facts are as follows.

### A. MEMORANDA OF UNDERSTANDING

The City negotiated Memoranda of Understandings ("MOU") with the Redondo Beach Police Officers Association ("POA") and the Redondo Beach Firefighters Association ("Firefighters Association" or "FA"), applicable to full-time employees. (City's Statement of Uncontroverted Facts in Supp. City Mot. ("City SUF") 2, 8, 9, 12, ECF No. 32-2.)

The MOUs between the City and Firefighters Association from July 1, 2014, to present ("FA MOUs") define "regular rate of pay" as "base rate of pay plus bonus pays, as defined by the [FLSA]." (*See* City SUF 13.) "[O]vertime pay" is defined as "one and one-half (1.5) times an employee's regular hourly rate of pay." (City SUF 14.) The FA MOUs define "work period" or "FLSA cycle" as "a period between seven and 24 consecutive days long." (City SUF 15.) The City established and maintained a 24-day work period for firefighters, for calculation of overtime, and the FA MOUs state that "[e]mployees shall be paid overtime pay for all hours worked above 182 hours in a 24-day work period . . . in accordance with the [FLSA]." (City SUF 11; Decl. of Diane Strickfaden ("Strickfaden Decl.") Ex. 6 ("FA MOUs"), art. 2 § 4.02, ECF No. 33-3.)

The MOUs between the City and the POA from July 1, 2014, to present ("POA MOUs") define "regular rate of pay" as "the base rate of pay and special pays as listed in Article III" of the POA MOUs. (*See* City SUF 4.) "[O]vertime" is defined as "work performed in excess of a regular scheduled work day or work week, paid at a rate of one and one-half times the employee's regular rate of pay." (City SUF 5.) "[W]ork period" is defined as "a period between seven and 28 consecutive days long as set by the City Manager." (City SUF 6.)

## B. MEDICAL BENEFIT PLANS

Beginning in 2014, the City allocated a monthly allowance to Officers and Firefighters who enrolled in and purchased health insurance benefits. (City SUF 18–19, 24.) Employees were permitted to opt out of the City's health insurance plan by providing proof of alternative coverage. (City SUF 22, 27.) Those employees who opted out received 50% of the value of their premium as cash-in-lieu. (City SUF 22, 27.)

In 2015, the City paid 13.63% of total plan contributions directly to employees. (City SUF 29.) In 2016, that number was 19.01%; in 2017, it was 22.49%; and in 2018, it was 21.57%. (City SUF 30–32.) The average amount of total contributions paid directly to employees from 2015 to 2018 was 19.18%. (City SUF 28.)

## C. PROCEDURAL BACKGROUND

On December 19, 2017, fifty-eight law enforcement officers ("Officers") sued the City in a collective action under the FLSA for failure to correctly calculate and pay overtime compensation. (*See* Compl. ¶ 5, ECF No. 1.) On February 23, 2018, fifty-seven firefighters ("Firefighters") brought a similar action against the City. *See* Compl., *Allen v. Redondo Beach*, No. 2:18-cv-1533-ODW (SKx) (filed Feb. 23, 2018). The Court consolidate the two actions on May 15, 2018 under the caption *In re City of Redondo Beach FLSA Litigation*. (Order to Consolidate Cases 2, ECF No. 25.)

The City and Plaintiffs each move for summary judgment. (*See* City Mot. 1–3; Pls.' Mot 1.) The City moves for summary judgment or partial summary judgment on the grounds that: the City's medical plan is bona fide such that contributions to third parties are excludable from Plaintiffs' regular rate of pay; the City established work periods for Officers and Firefighters under 29 U.S.C § 207(k) triggering a partial overtime exemption; certain Officers are not entitled to or are exempt from overtime compensation; the City owes no damages due to offset; and a two-year statute of

limitation applies. (City MSJ 1.)[2] Plaintiffs move for summary judgment or partial summary judgment on the grounds that: the City's failure to include bilingual pay and cash-in-lieu payments in Plaintiffs' regular rate of pay was a violation of the FLSA; a three-year statute of limitations applies; and Plaintiffs' are entitled to liquidated damages. (Pls.' Mot.)[3]

## III. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu*, 198 F.3d at 1134.

---

[2] The City also argues that the decision in *Texas v. United States*, 340 F. Supp. 3d 579 (N.D. Tex. 2018), holding that portions of the Medicaid Act as amended by the Affordable Care Act are unconstitutional, precludes Plaintiffs from pursuing their claims under the Fair Labor Standards Act. (City Mot. 1, 11.) However, nothing in the *Texas* decision is relevant to this opinion.

[3] The Parties each object to certain evidence offered by the other party. (*See* Pls.' Evid. Obj., ECF No. 43; City's Evid. Obj., ECF No. 45-2.) The Court **OVERRULES** all boilerplate objections. (*See* Scheduling and Case Management Order 9, ECF No. 18.) To the extent the Court relies without discussion on evidence to which the parties have objected, the Court **OVERRULES** the relevant objections. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1118–19 (E.D. Cal. 2006) ("[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself."). As to the remaining objections, the Court finds it unnecessary to rule on them because the Court does not rely on the disputed evidence.

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "non-moving party must show that there are 'genuine factual issues that properly can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party*.'" *Cal. Architectural Bldg. Prods.*, 818 F.2d at 1468 (quoting *Anderson*, 477 U.S. at 250). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Id.* (citing *Matsushita Elec. Indus.*, 475 U.S. at 586–87). "[U]ncorroborated and self-serving" testimony will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out "the material facts as to which the moving party contends there is no genuine dispute." C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. C.D. Cal. L.R. 56-2. "[T]he Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." C.D. Cal. L.R. 56-3.

## IV. DISCUSSION

The FLSA is meant to protect workers from "substandard wages and oppressive working hours." *Adair v. City of Kirkland*, 185 F.3d 1055, 1059 (9th Cir. 1999) (quoting *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)). "Under the FLSA, an employer must pay its employees premium overtime compensation of one and one-half times the regular rate of payment for any hours worked in excess of forty in a seven-day work week. The 'regular rate' is defined as 'all remuneration for employment paid to, or on behalf of, the employee,' subject to a number of exclusions set forth in the Act." *Flores v. City of San Gabriel*, 824 F.3d 890, 895 (9th Cir. 2016) (citations omitted).

Courts are to construe the FLSA liberally in favor of employees and its exemptions "narrowly . . . against the employers seeking to assert them." *Alvarez v. IBP, Inc.*, 339 F.3d 894, 905 (9th Cir. 2003), *aff'd*, 546 U.S. 21 (2005) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)). "The employer bears the burden of establishing that it qualifies for an exemption under the Act" and courts should not find a FLSA exemption applicable "except in contexts plainly and unmistakably within the given exemption's terms and spirit." *Flores*, 824 F.3d at 897 (alterations omitted).

### A. REGULAR RATE OF PAY

Plaintiffs move for partial summary judgment on the grounds that the City failed to include bilingual pay in Officers' regular rate of pay, and cash-in-lieu of benefits in Plaintiffs' regular rate of pay. (Pls.' Mot. 5–8.) The City moves on an overlapping issue, that contributions made to the medical benefits plan are excludable from Plaintiffs' regular rate of pay because the plan is "bona fide." (City Mot. 14–16.)

Under the FLSA, the overtime rate is calculated based on the regular rate, which, "by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments." *Local 246 Util. Workers Union v. S. Cal. Edison Co.*, 83 F.3d 292, 297 (9th Cir. 1996).

*1. Bilingual Pay*

Plaintiffs argue that the City failed to include bilingual pay in Officers' regular rate of pay. (*See* Pls.' Mot 5–6.) However, Plaintiffs point the Court to no factual or evidentiary support for this assertion. (*See* Pls.' Mot 5–6; Pls.' Statement of Uncontroverted Facts ("Pls.' SUF"), ECF No. 40-1.) The only relevant statement of uncontroverted fact Plaintiffs offer states "[t]he bilingual rate of pay that is the subject of this lawsuit should have been included in the overtime rate of pay." (Pls.' SUF 6.) Even if this statement were not disputed,[4] for support Plaintiffs cite only "Plaintiff [sic] Index of Exhibit 1–6, 8, 9, and 10." Such a vague citation is useless and warrants exclusion of the evidence. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774–75 (9th Cir. 2002) (finding failure to provide specific citations to deposition testimony and affidavits warrants exclusion of the evidence). The parties bear the burden to lay out their support clearly. *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001) (discussing that the district court may limit its review to those parts of the record specifically referenced). Plaintiffs have failed to establish that the City excluded bilingual pay from any Officers' regular rate of pay. Accordingly, the Court **DENIES** Plaintiffs' Motion on this issue.

*2. Bona Fide Medical Benefits Plan*

The City moves for partial summary judgment on the grounds that the City's medical benefits plan is a "bona fide" plan under 29 U.S.C. § 207(e)(4), cash payments to Plaintiffs were merely incidental to the total plan contributions, and thus payments *to the plan* on behalf of Plaintiffs are therefore excludable from the regular rate. (City Mot. 4, 14.) Plaintiffs oppose and also move for partial summary judgment on the grounds that the plan is not a "bona fide" plan, so the City should

---

[4] The City contends the statement is unsupported and calls for a legal conclusion. (City's Separate Statement of Uncontroverted Facts in Opp'n 6, ECF No. 45-1.) The City also asserts with support that it included bilingual pay in eligible Officers' regular rate of pay. (*See* City Opp'n to Pls.' Mot. ("City Opp'n") 20, ECF No. 45; Suppl. Decl. of Diane Strickfaden in Supp. of City's Reply ("Suppl. Strickfaden Decl.") ¶ 8, ECF No. 44-1.) Accordingly, even had Plaintiffs supported their claim, the City raises a genuine dispute of fact that precludes summary judgment.

have included the value of direct cash payments *to Plaintiffs* in their regular rate. (Pls.' Mot. 6–7; Pls.' Opp'n to City Mot. ("Pls.' Opp'n") 7–9, ECF No. 42.)

Like ships passing in the night, the parties each forward their own destination and unhelpfully persist in misreading or misconstruing the opposing arguments. Accordingly, the Court distills the parties' contentions to the following issues: (1) whether the undisputed facts establish that cash payments to employees were merely incidental such that the medical benefits plan is bona fide under 29 U.S.C. § 207(e)(4) and contributions to *the plan* are excludable from the regular rate; and (2) whether the undisputed facts establish that the City failed to include the value of cash-in-lieu payments *to Plaintiffs* in the regular rate.

*Bona Fide Plan*

Contributions made "to a trustee or third person pursuant to a bona fide plan" for providing health insurance to employees are excludable from the regular rate under 29 U.S.C. § 207(e)(4). *Flores*, 824 F.3d at 901. In contrast, unused benefits paid directly to an employee "cannot be excluded under § 207(e)(4)." *Id.* Although the statute does not define "bona fide," regulations interpreting the FLSA state that a plan that otherwise qualifies as "bona fide" under § 207(e)(4) may still be regarded as "bona fide" even though it provides "incidental" cash payments to employees. *Id.* at 902 (quoting 29 C.F.R. § 778.215(a)(5)[5]). Here, the parties do not address whether the City's benefits plan *otherwise* qualifies as a bona fide plan[6]; they dispute only whether direct payments to employees are more than "an incidental part" of the plan.

---

[5] 29 C.F.R. § 778.215(a)(5) provides:
> The plan must not give an employee the . . . option to receive any part of the employer's contributions in cash instead of the benefits under the plan: Provided, however, That *if a plan otherwise qualified as a bona fide benefit plan* under section 7(e)(4) of the Act, *it will still be regarded as a bona fide plan even though it provides*, *as an incidental part thereof*, for the payment to an employee in cash of all or a part of the amount standing to his credit . . . .

29 C.F.R. § 778.215(a)(5) (emphasis added).

[6] In addition to subsection (a)(5), a plan is bona fide pursuant to 29 C.F.R. § 778.215(a) when:
> (1) Contributions are made pursuant to a specific plan adopted by the employer;

8

In *Flores v. San Gabriel*, the Ninth Circuit considered an Opinion Letter by the Department of Labor ("DOL") interpreting the regulation, in which the DOL proposed a bright line rule that "incidental" contributions must not exceed 20% of total contributions. 824 F.3d at 902–03. The court rejected the DOL's opinion as unpersuasive and lacking any rationale for a 20% ceiling. *Id.* at 903. Even without a ceiling, the court found the City's direct payments (42%–46% of its total contributions) too great, "simply not an 'incidental' part of its [benefits plan] under any fair reading of that term." *Id.*

In this case, the parties do not dispute that the City's direct cash-in-lieu payments constitute between 13.63% and 22.49% of its total contributions, depending on the year. Even considering each year individually, the direct cash-in-lieu payments are not more than incidental to the total contributions for that year. (City SUF 29–32 (noting the years and direct payment percentages as 2015, 13.63%; 2016, 19.01%; 2017, 22.49%; and 2018, 21.57%).) Plaintiffs focus on 2017 and 2018 as exceeding 20% and argue that the City's plan consequently cannot be bona fide in those years. (Pls.' Opp'n 8.) However, the court in *Flores* unambiguously rejected this precise bright line rule. Further, unlike *Flores* where the direct payments comprised 42%–46% of the total contributions each year, here direct payments to employees were half that, hovering around or below 20%. Thus, benefit payments *to the plan* here constitute between 77% and 86% of all contributions for each year at issue. This balance indicates the cash payments were merely an incidental part of the City's benefits plan.

---

(2) The primary purpose of the plan is to provide systematically for the payment to employees of benefits for death, disability, retirement, and health expenses;
(3) The benefit must be specified or definitively determinable on an actuarial basis, or there must be a formula pursuant to the regulation for determining the amount of contributions by the employer and the employee; [and]
(4) The employer's contributions must be paid irrevocably to a trustee or a third person pursuant to an insurance agreement, trust or other funded arrangement.

29 C.F.R. § 778.215(a).

Accordingly, the Court **GRANTS** the City's Motion to the extent the Court finds the City's cash-in lieu payments to employees for the years 2015–18 to be an incidental part of the City's benefits plan. Accordingly, payments to the plan on behalf of Plaintiffs in those years may be properly excluded under § 207(e)(4). However, the parties fail to address whether the plan otherwise qualifies as a bona fide plan under § 207(e)(4). Accordingly, the Court **DENIES** the City's Motion and the Plaintiffs' Motion to the extent they seek a finding that the benefits plan is or is not a bona fide plan.

### *Cash-in-Lieu Payments*

As noted, unused benefits paid directly to an employee "cannot be excluded [from the regular rate] under § 207(e)(4)." *See Flores*, 824 F.3d at 901. Plaintiffs move for partial summary judgment on the grounds that the City failed to include cash-in-lieu payments in Plaintiffs' regular rate. (Pls.' Mot. 6–8.) However, as with Plaintiffs' contentions regarding bilingual pay, Plaintiffs have failed to provide any factual or evidentiary support for such a finding. (*See generally* Pls.' Mot. 6–8; Pls.' SUF 10–12.) As Plaintiffs fail to support that any Plaintiff opted out of the benefits plan or received cash-in-lieu, or that the City failed to include any such cash payments in any Plaintiff's regular rate, the Court **DENIES** Plaintiffs' Motion as to this issue.

**B.  SECTION 207(K) WORK PERIODS**

The City moves for partial summary judgment on the grounds that it implemented and maintained alternative work periods for all Plaintiffs, triggering the partial overtime exemption under 29 U.S.C. § 207(k). (City Mot. 2, 11–13.)

The FLSA provides a limited exemption from the forty hour per week overtime requirement for public employers of fire protection or law enforcement personnel. *See* 29 U.S.C. § 207(k); 29 C.F.R. § 553.201(a); *Adair*, 185 F.3d 1059. "The partial overtime exemption in § 207(k) 'increases the overtime limit slightly and it gives the employer greater flexibility to select the work period over which the overtime limit will be calculated.'" *Flores*, 824 F.3d at 895–96 (quoting *Adair*, 185 F.3d at 1060).

The employer must show that "it established a § 207(k) work period and that the § 207(k) work period was regularly recurring." *Id.* at 904. The employer bears the burden of establishing that it qualifies for the exemption. *Adair*, 185 F.3d at 1060. "Whether an employer meets this burden is normally a question of fact." *Id.*

### 1. *24-day Work- Period for Firefighters*

The City moves for partial summary judgment on the grounds that it implemented and maintained a 24-day work period for all Firefighters, triggering § 207(k)'s exemption, and therefore Firefighters are not entitled to overtime compensation unless they worked more than 182 hours in a 24-day work period. (City Mot. 2, 11–14.) Plaintiffs do not oppose the City's Motion as to the § 207(k) exemption for Firefighters. (*See* Pls.' Opp'n 3–7.)

The facts regarding the § 207(k) exemption for Firefighters are undisputed. (*See* City SUF 11–16; Pls.' Resp. to City SUF ("PRSUF") 11–16, ECF No. 42-1.) The FA MOUs define "work period" or "FLSA cycle" as "a period between seven and 24 consecutive days long," and state that "[e]mployees shall be paid overtime pay for all hours worked above 182 hours in a 24-day work period . . . in accordance with the [FLSA]." (City SUF 15; FA MOUs art. 2 § 4.02; PRSUF 16.) The City established and maintained a 24-day work period for firefighters, for calculation of overtime. (City SUF 11, 16; PRSUF 11, 16.) The City supports these undisputed facts with the FA MOUs and the Declaration of Diane Strickfaden, the City's Director of Human Resources. (*See* Strickfaden Decl., ¶¶ 10–14, Ex. 6–8.) As Plaintiffs do not dispute that the City established and maintained a regularly recurring 24-day work period for firefighters, the Court **GRANTS** the City's Motion on this issue and finds that the City established and maintained a 24-day § 207(k) work period for Firefighters.

### 2. *28-day Work-Period for Officers*

The City also moves for partial summary judgment on the grounds that it implemented and maintained a § 207(k) work period for all police officers, and therefore Officers are not entitled to overtime compensation unless they worked more

than 171 hours in a 28-day work period. (City Mot. 2, 11–14.) However, the undisputed facts do not support a finding that the City established a § 207(k) work period for Officers.

The City argues that the POA MOUs demonstrate it established a 28-day work period and that the Chief of Police stated in a 1979 memorandum that "'[w]ork periods are twenty eight (28) days each' for law enforcement officers." (City SUF 7; City Mot. 13.) While it is undisputed that the POA MOUs define "work period" as "a period between seven and 28 consecutive days long as set by the City Manager," this definition encompasses the *possibility* of a 28-day work period, but does not *establish* one. (City SUF 6; PRSUF 6.) Further, this undisputed fact establishes that the City Manager, not the Chief of Police, sets the work period.

Even assuming without finding that the asserted 1979 memorandum could have established a § 207(k) work period, the City provides no support for the memorandum's existence. The City does not mention the memorandum in its statement of uncontroverted facts or otherwise point the Court to supporting evidence. (*See generally* City SUF 2–6.) Instead the City cites broadly to the POA MOUs to prove that it established a 28-day work period. (*See* City SUF 7 (citing Strickfaden Decl. Exs. 1–3 (MOU POAs 2014–2018)).) However, as noted above, the parties bear the burden to lay out their support clearly and the City's sweeping citation to 140 pages of material, without specificity, fails to provide the requisite support to warrant judgment as a matter of law. *See Carmen*, 237 F.3d at 1030; *see also Christian Legal Soc. Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483, 488 (9th Cir. 2010) ("Judges are not like pigs, hunting for truffles in briefs."). The Court declines to identify and interpret the City's evidence for it. Thus, the Court finds that the City fails to meet its burden to show that it established a 28-day work period for police officers to trigger § 207(k)'s partial overtime exemption.

Thus, the Court **DENIES** the City's Motion on this issue because the City has not shown that it established or maintained a § 207(k) work period for Officers.[7]

### *Certain Officers*

The City moves for partial summary judgment on the grounds that certain Officers are not entitled to any overtime compensation. (*See* City Mot. 1, 6–9, 19–20, 23.) Specifically, the City seeks findings that: "the [§ 207(k)] exemption applies and prevents three [O]fficers (Ian Miesen, Todd Heywood[,] and Yesenia Contreras) from receiving any overtime compensation since they did not work overtime under [§ 207(k)]" and "thirty-six Officers are not entitled to any damages under [§ 207(k)] since they were all compensated properly every work period." (City Mot. 1.) However, the City reaches these conclusions by assuming the § 207(k) exemption applies to Officers, which it has failed to establish. Accordingly, the Court **DENIES** the City's Motion on these issues.

## C. CUMULATIVE OFFSET

The City seeks a finding that, under a cumulative offset, Officers have not been harmed and are owed no overtime compensation. (City Mot. 1, 21–22.)

"Under the FLSA, 29 U.S.C. § 207(h)(2), an employer may credit overtime payments already made to employees against overtime payments owed to them under the FLSA." *Haro v. City of Los Angeles*, 745 F.3d 1249, 1259–60 (9th Cir. 2014) (citing 29 U.S.C. § 207(h)(2)). "The statute, however, does not specify the method to be used to calculate these overtime payments. The statute simply states that '[e]xtra compensation . . . shall be creditable toward overtime compensation payable pursuant to this section.'" *Id.* The Ninth Circuit has held that the correct calculation is a week-

---

[7] Even had the City supported that it established a 28-day work period for police officers, the City fails to establish that any such work period was "regularly recurring." *See Flores*, 185 F.3d at 904 ("[T]he employer [must] show that it established a § 207(k) work period and that the § 207(k) work period was regularly recurring."). This is an additional reason to deny the City's Motion on this issue.

by-week approach. *Id.* Accordingly, the City may not use a cumulative offset in calculating damages.

The City argues that failing to apply cumulative credits and mandating backpay will create an undeserved windfall for Officers. (City Mot. 22.) However, the Ninth Circuit in *Haro* rejected this very argument:

> [I]f the City were able to use premium payments [in a cumulative fashion], the City would be the recipient of the windfall, and in fact would be placed in a substantially better position than if it had complied with the overtime requirements of the FLSA all along. . . . It is contrary to the language and the purpose of the statute.

*Id.* at 1260 (quoting *Howard v. City of Springfield*, 274 F.3d 1141 (7th Cir. 2001)).

The City alternatively argues for an offset calculated per "FLSA Work Period." (City Mot. 22.) However, as noted, the City fails to establish that it implemented and maintained an alternative FLSA work period for Officers and, accordingly, may not calculate its potential offset on such basis. Accordingly, the Court **DENIES** the City's Motion on this issue.

### D. FAILURE OF PROOF

The parties move for partial summary judgment as to several additional issues, each of which fails as to proof.

*1. Executive/Administrative Exemption*

The City moves for partial summary judgment on the grounds that five Officers are exempt from overtime compensation under 29 U.S.C. § 213(a)(1) as executives and administrators. (City Mot. 1, 16–18.)

Employees who are employed in executive or administrative capacities are exempt from overtime pay. *See* 29 U.S.C. § 213(a)(1). The executive exemption depends on the employee's salary, primary duty to manage, and authority to supervise or hire and fire other employees. 29 C.F.R. § 541.100(a). Similarly, the administrative exemption depends on the employee's salary, primary duty to perform office work related to management, and exercise of discretion and independent

judgment. *Id.* § 541.200(a). To determine the "primary duty" of a particular employee, a court must make a determination "based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole," considering several factors, including the ratio of time and importance of exempt versus non-exempt work. *Id.* § 541.700(a).[8]

As noted above, courts construe FLSA exemptions "narrowly . . . against the employers seeking to assert them," *Alvarez*, 339 F.3d at 905, and the employer bears the burden of proving by a preponderance of the evidence that the employee "plainly and unmistakably" fits within the claimed exemption, *Flores*, 824 F.3d at 897. *See also Duff-Brown v. City & Cty. of San Francisco*, No. C11-3917 TEH, 2013 WL 163530, at *4 (N.D. Cal. Jan. 15, 2013) (noting the preponderance standard).

The City contends that five Officers are police lieutenants or police captains who each come within the executive and/or administrative exemptions. (City Mot. 16–18.) The City argues that these five Officers are subject to the executive exemption because their "primary duties are managing and directing the law enforcement officers under their command." (City Mot. 18.) The City argues they are also subject to the administrative exemption because "their primary duties are related to the general business operations of the police department [and] they exercise discretion and independent judgment as to daily operations, emergency situations, and staffing decisions." (City Mot. 18.) However, the only support the City offers other than conclusory assertions are the job descriptions of Police Lieutenants and Police Captains generally, together with Ms. Strickfaden's statement that "the duties set forth [in the applicable job description] have always been this individual's job duties during

---

[8] Factors to consider when determining the primary duty of an employee include, but are not limited to: (1) "the relative importance of the exempt duties as compared with other types of duties"; (2) "the amount of time spent performing exempt work"; (3) "the employee's relative freedom from direct supervision"; and (4) "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.* § 541.700(a).

his time as [a Police Lieutenant or Captain, as applicable]. (Suppl. Strickfaden Decl. ¶¶ 3–7, Exs. 1–2.)

Even accepting without finding that the job descriptions accurately describe these five Officers' job duties, the City provides no information regarding the Officers' performance of those duties or what portion of the Officers' duties constitute exempt work. *See Carson v. City of Los Angeles*, No. CV 15-7057-JFW (KLSx), 2016 WL 7647681, at *6–8 (C.D. Cal. Sept. 22, 2016) (discussing facts specific to the plaintiffs' performance of their duties and the portion of time spent performing non-exempt work). Nor does the City address the factors for consideration to determine an employee's primary duty, or the exemption factors other than primary duty. *See* 29 C.F.R. §§ 541.200(a), 541.700(a).

The employer bears the burden of proving that the employee "plainly and unmistakably" fits within the claimed exemption. *Flores*, 824 F.3d at 897. The determination of an employee's primary duties must be based on all the facts in a particular case and the City has failed to provide sufficient support for the facts concerning the five Officers' primary duties.[9] Accordingly, the Court **DENIES** the City's Motion on this issue.

### 2. Statute of Limitations

The City moves for partial summary judgment seeking a two-year statute of limitations. (City Mot. 18–19.) In contrast, Plaintiffs move for partial summary judgment seeking a three-year statute of limitations. (Pls.' Mot. 8.)

"The [FLSA] has a two-year statute of limitations for claims unless the employer's violation was 'willful,' in which case the statute of limitations is extended to three years." *Flores*, 824 F.3d at 895–96 (citing 29 U.S.C. § 255(a)). To prove willfulness, a plaintiff must demonstrate that the employer was "on notice of its FLSA

---

[9] Plaintiffs argue that the City fails to establish these five Officers are not subject to the First Responder exemption from the executive/administrative exemptions. (Pls.' Opp'n 9–10 (discussing 29 C.F.R. § 541.3).) As the Court finds the City fails to establish that the executive or administrative exemptions apply, the Court does not reach the question.

requirements, yet took no affirmative action to assure compliance with them." *Alvarez*, 339 F.3d at 909; *see also Carson*, 2016 WL 7647681, at *9. "To prove a particular FLSA violation willful under § 255, the Supreme Court has, in general, required evidence of an employer's 'kn[owing] or [ ] reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Alvarez*, 339 F.3d at 909. "An employer need not violate the statute knowingly for its violation to be considered 'willful' under § 255(a), although 'merely negligent' conduct will not suffice." *Flores*, 824 F.3d at 906 (quoting *Alvarez*, 339 F.3d at 908 and *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).) Courts "will not presume that conduct was willful in the absence of evidence." *Id.* at 906.

Plaintiffs argue the City was on notice of its FLSA obligations and failed to act to ensure its compliance. (Pls.' Mot. 8; Pls.' Opp'n 11–13.) Plaintiffs contend the City had notice of the obligation to include cash-in-lieu value in the regular rate because the Ninth Circuit's 2016 decision in *Flores v. City of San Gabriel* "garnered national attention." (Pls.' Opp'n 12.) Further, Plaintiffs argue that the City took no affirmative action in light of this notice to ensure its compliance, referencing the deposition of Diane Strickfaden wherein she testified that she did not know if the City consulted with anyone following the *Flores* decision. (Pls.' Mot. 8.) However, Plaintiffs cite to absolutely no factual or evidentiary support for these arguments. (*See* Pls.' Mot. 1–3, 8; Pls.' Opp'n 11–13; *see generally* Pls.' SUF.[10]) Plaintiffs fail to provide any support whatsoever for the notion that the City had notice of the FLSA requirement under the *Flores* decision to include cash-in-lieu value in the regular rate and yet recklessly disregarded those obligations. As such, the Court finds Plaintiffs

---

[10] Plaintiffs' statement of uncontroverted facts cites to a "30(b)(6) Deposition." (*See* Pls.' SUF 8–12.) First, these citations do not concern the issue of willfulness, and second, they lack any specificity regarding the referenced deposition, warranting exclusion. *See Orr*, 285 F.3d at 774–75 (excluding deposition evidence for lack of specific citations). Finally, Plaintiffs submit the entire deposition as an attachment to an index (ECF No. 41), in contravention of the Court's Standing and Scheduling Orders. For all of these reasons, the Court excludes the deposition of Diane Strickfaden.

have failed to establish that the City's alleged violations were willful and a two-year statute of limitations applies.

Accordingly, the Court **DENIES** Plaintiffs' Motion for a three-year statute of limitations and **GRANTS** the City's Motion for a two-year statute of limitations.

### 3. *Liquidated Damages*

The City and Plaintiffs each move for partial summary judgment on the issue of liquidated damages. (City Mot. 23; Pls.' Mot. 9.)

"For violations of the FLSA's minimum and overtime wage provisions, employers 'shall be liable to the . . . employees affected in the amount of . . . overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.'" *Alvarez*, 339 F.3d at 909 (quoting 29 U.S.C. § 216(b)). "The FLSA provides a defense to liquidated damages for an employer who establishes that it acted in good faith and had reasonable grounds to believe that its actions did not violate the FLSA." *Flores*, 824 F.3d at 895–96 (citing 20 U.S.C. § 260). However, this is a "difficult burden" and "[a]n employer who 'failed to take the steps necessary to ensure its practices complied with FLSA' and who 'offers no evidence to show that it actively endeavored to ensure such compliance' has not satisfied § 260's heavy burden." *Id.* at 905 (original alterations omitted) (quoting *Alvarez*, 339 F.3d at 910); *see also Haro*, 745 F.3d at 1259. Where the employer "fails to carry that burden," the Ninth Circuit has noted, "liquidated damages are mandatory." *Local 246*, 83 F.3d at 297.

Plaintiffs seek liquidated damages, contending the City cannot show it acted in good faith or had reasonable grounds to believe there was no violation. (Pls.' Mot. 9.) The City seeks a finding that Plaintiffs are not entitled to liquidated damages because the City acted in subjective good faith and had objective reasonable grounds for believing there was no violation. (City Mot. 23–24.) The City offers only argument, and no factual or evidentiary support, for its purported subjective "good faith" or objective "reasonable grounds" for the conduct at issue. (*See generally* City Mot. 23–24; City SUF.) Thus, the Court is inclined, based on the record at this time, to find the

City failed to carry its "difficult burden." However, no party moves the Court for summary judgment as to the City's liability. As the Court does not reach a finding as to liability, it need not rule on damages at this time. Accordingly, the Court **DENIES** the City's Motion and Plaintiffs' Motion on this issue.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** the City's Motion for Partial Summary Judgment (ECF No. 32) and **DENIES** Plaintiffs' Motion for Partial Summary Judgment (ECF No. 38). Specifically, the Court **GRANTS** the City's Motion **IN PART** and finds that: the City's cash-in-lieu payments constitute an incidental part of the City's benefits plan; the City established a § 207(k) 24-day work period for Firefighters; and a two-year statute of limitations applies. (ECF No. 32.) The Court **DENIES** the City's Motion as to all other issues. The Court **DENIES** Plaintiffs' Motion as to all issues. (ECF No. 38.)

**IT IS SO ORDERED.**

November 25, 2019

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**