O
JS-6

# United States District Court
# Central District of California

IN RE CITY OF REDONDO BEACH FLSA LITIGATION

Case № 2:17-cv-09097-ODW (SKx)

**ORDER GRANTING JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT AND DISMISSAL OF ACTION WITH PREJUDICE [75]**

## I.   INTRODUCTION

Law enforcement officers ("Officers") and firefighters ("Firefighters"; together with Officers, "Plaintiffs") sued the City of Redondo Beach ("City") under the Fair Labor Standards Act ("FLSA") for alleged miscalculation of overtime compensation. The parties have reached an agreement and now seek approval of the FLSA settlement. (*See* Joint Mot. for Approval of FLSA Settlement & Dismissal of Action with Prejudice ("Mot."), ECF No. 75.)  For the reasons discussed below, the Court **GRANTS** the parties' Motion.[1]

---

[1] After carefully considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

Plaintiffs are employed or were previously employed by the City. (Mot. 3 (citing Decl. of Eric J. Wu ("Wu Decl.") ¶ 3, ECF No. 75-1).) They are or were non-exempt and entitled to overtime compensation under the FLSA and collective bargaining agreements, referred to as Memoranda of Understanding ("MOUs"),[2] between the City and the Redondo Beach Police Officers Association or between the City and the Redondo Beach Firefighters Association. (Wu Decl. ¶ 3.)

On December 19, 2017, fifty-eight Officers sued the City for allegedly failing to correctly calculate and pay overtime compensation under the FLSA. (*See* Compl. ¶ 5, ECF No. 1.) On February 23, 2018, fifty-seven Firefighters brought a similar action against the City. *See Allen v. City of Redondo Beach*, No. 2:18-cv-1533-ODW (SKx) (C.D. Cal. filed Feb. 23, 2018). The Court consolidated the two actions on May 15, 2018, under the caption *In re City of Redondo Beach FLSA Litigation*. (Order to Consolidate Cases, ECF No. 25.)

From the lawsuit's inception, the parties negotiated extensively in attempts to resolve the underlying disputes. (Wu Decl. ¶ 4; Decl. of Michael A. McGill ("McGill Decl.") ¶ 4, ECF No. 75-2.) In April 2019, they attended mediation but did not reach an agreement. (Wu Decl. ¶ 4; McGill Decl. ¶ 4.) In November 2019, the Court ruled on the parties' cross motions for partial summary judgment, granting in part and denying in part the City's motion and denying Plaintiffs' motion. (MSJ Order 19.) Following the Court's ruling, and with the aid of an expert witness's calculation of potential damages, the parties engaged in further detailed negotiations and reached an agreement. (Wu Decl. ¶ 5; McGill Decl. ¶ 5; *see* Mot. 6, Ex. A ("Settlement Agreement" or "SA").) Plaintiffs and the City authorized and approved the settlement. (*See* McGill Decl. ¶ 6; Wu Decl. ¶ 6.)

---

[2] The Court previously discussed the MOUs in resolving the parties' motions for partial summary judgment and incorporates that discussion here by reference. (Order Granting in Part & Den. in Part Def.'s Mot. Summ. J. and Den. Pls.' Mot. Summ. J. ("MSJ Order") 2, ECF No. 56.)

In light of the Court's ruling and the expert's undisputed damages calculations, the parties determined that some Plaintiffs would not receive any settlement compensation; therefore, on July 22, 2020, ninety-two Plaintiffs dismissed their claims without prejudice. (Mot. 5–6; SA Recitals, Ex. A ("Pls. Dismissing Lawsuit Without Prejudice"); *see* Order for Dismissal without Prejudice, ECF No. 71.) The remaining twenty-three Plaintiffs[3] and the City executed the Settlement Agreement now before the Court for approval. (*See* Mot; SA.)

### III. LEGAL STANDARD

The FLSA is meant to protect workers from "substandard wages and oppressive working hours." *Adair v. City of Kirkland*, 185 F.3d 1055, 1059 (9th Cir. 1999) (quoting *Barrentine v. Ark.–Best Freight Sys.*, 450 U.S. 728, 739 (1981)). "The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be waived or modified by a contract." *Beidleman v. City of Modesto*, No. 1:16-cv-01100-DAD (SKOx), 2018 WL 1305713, at *1 (E.D. Cal. Mar. 13, 2018) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013)). Rather, an employee's claims under the FLSA may be waived or settled only with the supervision of the Secretary of State or approval of a district court. *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. Jan. 29, 2016).

In reviewing a FLSA settlement for potential approval, "a district court must determine whether the settlement represents a 'fair and reasonable resolution of a bona fide dispute.'" *Id.* (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53, 1355 (11th Cir. 1982)).

---

[3] The settling Plaintiffs are: David Arnold, John J. Anderson, John Bruce, Robert Carlborg, Mark Chafe, David M. Christian, Justin Drury, Joseph Fonteno, Michael J. Green, Ryan Harrison, Corey W. King, Aaron Plugge, Bryan Ridenour, Jason Sapien, Michael Snakenborg, Stephen M. Sprengel, Terrence Stevens, Brian Weiss, Andrei Alexandrescu, Donovan Hall, Brandon Lackey, David Smith, and Bart Waddell. (*See* SA Preamble; Mot. 3.)

## IV. DISCUSSION

The Court first considers whether a bona fide dispute exists before turning to the fairness of the proposed settlement.

### A. BONA FIDE DISPUTE

"A bona fide dispute exists when there are legitimate questions about the existence and extent of [a d]efendant's FLSA liability." *Selk*, 159 F. Supp. 3d at 1172 (internal quotation marks omitted). If the settlement reflects a reasonable compromise over actually disputed issues, "such as FLSA coverage or computation of back wages, . . . the district court [may] approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354.

Here, the parties dispute the existence and extent of the City's liability under the FLSA. In particular, the parties disagree over whether the City failed to correctly calculate or pay overtime compensation, and whether Plaintiffs are entitled to any damages, including liquidated damages based on the City's alleged lack of good faith. (*See* Mot. 8–9; McGill ¶ 8; Wu Decl. ¶ 8; *see also* MSJ Order 4, 6–16, 18–19.) These disagreements over central issues raise legitimate questions about the existence and extent of the City's FLSA liability. *See Beidleman*, 2018 WL 1305713, at *3 (recognizing disagreements over calculation of overtime compensation and whether the defendant acted in good faith as bona fide disputes). Therefore, the Court is satisfied that the settlement reflects a compromise of bona fide disputes.

### B. FAIR AND REASONABLE

After a district court has found that a bona fide dispute exists, it must determine whether the FLSA settlement is fair and reasonable. *Selk*, 159 F. Supp. 3d at 1172. To do this, courts evaluate the totality of the circumstances within the context of the FLSA. *Id.* at 1172–73. Courts in this circuit consider the following factors, borrowed from review of class action settlements: (1) plaintiff's range of possible recovery; (2) the stage of proceedings and discovery completed; (3) the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the

experience and views of counsel and participating plaintiffs; and (6) the possibility of fraud or collusion. *Id.* at 1173. "[A] district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Id.*

   1.   Range of Recovery

First, "[a] court considers a plaintiff's range of potential recovery to ensure that the settlement amount is reasonable in relation to the true settlement value of the claims." *Dashiell v. Cnty. of Riverside*, No. EDCV 15-00211-JGB (SPx), 2018 WL 3629915, at *3 (C.D. Cal. July 19, 2018) (citing *Selk*, 159 F. Supp. 3d at 1174).

Here, an expert witness prepared an Expert Report in which she calculated each Plaintiff's potential damages by examining detail check history data, pay and deduction code lists, daily time reports and records, the MOUs, and the Complaints in this consolidated action. (Wu Decl. ¶ 9; SA Ex. B ("Expert Report") Ex. 4.) The parties reviewed relevant data including the Expert Report, the Court's ruling on the summary judgment motions, and available evidence, and agreed that the Expert Report accurately reflects each Plaintiff's potential damages. (McGill Decl. ¶ 9; SA Recitals; *see also* Expert Report Schedules 1 & 3.) Based on this extensive information, the Settlement Agreement awards each remaining Plaintiff a sum "close to their maximum recovery." (Mot. 10 (citing Wu Decl. ¶ 9; McGill Decl. ¶ 9); *see* SA ¶ A.2.A (listing sums to be awarded to each Plaintiff based on the Expert Report); Expert Report Schedules 1&3.)

It is clear the parties have weighed the potential value of their claims in light of the available evidence, the Court's rulings, and the expert's detailed calculations. The Court is satisfied that the settlement amount bears a reasonable relation to the true settlement value of Plaintiffs' claims. *See Ambrosino v. Home Depot U.S.A, Inc.*, No. 11-cv-1319-L (MDDx), 2014 WL 3924609, at *2 (S.D. Cal. Aug. 11, 2014) (finding settlement amount fair and reasonable where the parties weighed the potential value of the claims in light of the plaintiffs' work history). Further, the possibility

remains that Plaintiffs could recover nothing, so the certainty of a payout from settlement, even where small, weighs in favor of finding the compromise reasonable. *See Selk*, 159 F. Supp. 3d at 1175 (finding settlement amount fair and reasonable, even though individual payouts were small, where the possibility remained that plaintiffs would recover nothing if the case proceeded). Thus, this factor favors approval.

   2.  *Stage of Proceedings & Amount of Discovery*

Second, courts consider the stage of proceedings and the amount of discovery completed to ensure the parties "have an adequate appreciation of the merits of the case before reaching a settlement." *Selk*, 159 F. Supp. 3d at 1177. Here, the parties engaged in extensive discovery and the proceedings were at an advanced stage, approaching trial, before they reached an agreement. (Mot. 10.) The City engaged an expert witness who prepared a detailed report of Plaintiffs' potential damages under numerous variables. (*See* Expert Report.) And the Court issued a lengthy decision on the parties' summary judgment motions. (*See* MSJ Order.) The Court finds the stage of proceedings and information exchanged sufficient for the parties to make an informed decision regarding settlement. *See Beidleman*, 2018 WL 1305713, at *4 (finding the parties sufficiently informed prior to settlement where the plaintiff retained an expert to review payroll and perform back pay calculations); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (finding that a "district court could find that counsel had a good grasp on the merits" of the case before settlement where "[e]xtensive discovery had been conducted, and the parties had gone through one round of summary judgment proceedings"). Accordingly, this factor favors approval.

   3.  *Seriousness of Litigation Risks*

Third, courts consider the "seriousness of the litigation risks faced by the parties." *Selk*, 159 F. Supp. 3d at 1173, 1175–76. "Courts favor settlement where 'there is a significant risk that litigation might result in a lesser recover[y] . . . or no recovery at all.'" *Beidleman*, 2018 WL 1305713, at *4 (quoting *Bellinghausen v.*

*Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015)). Here, the parties dispute the existence and extent of the City's liability, whether the City failed to correctly calculate or pay overtime compensation, and whether Plaintiffs are entitled to damages, including liquidated damages. (*See* Mot. 11.) Plaintiffs risk reduced or no recovery if the disputed issues are adjudicated in the City's favor, and the City risks liability if they are adjudicated in Plaintiffs'. "Considering the uncertainties of litigation, the relative immediacy of settlement serves to benefit" the parties. *Pike v. Cnty. of San Bernardino*, No. EDCV 17-1680-JGB (KKx), 2019 WL 8138439, at *4 (C.D. Cal. Nov. 25, 2019). Thus, this factor favors approval.

### 4. Scope of Release

Fourth, "[c]ourts review the scope of any release provision in a FLSA settlement to ensure that class members are not pressured into forfeiting claims, or waiving rights, unrelated to the litigation." *Selk*, 159 F. Supp. 3d at 1178. "A FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself." *Beidleman*, 2018 WL 1305713, at *4. Here, the release provision tracks Plaintiffs' wage and hour claims and potential liquidated damages. (*See* Mot. 11; SA ¶ 3.) It is limited to claims "connected with or related to the Lawsuit," and the Settlement Agreement is limited in scope to the FLSA cause of action. (SA ¶ 3; *see id.* Recitals.) Thus, the release does not go beyond the specific FLSA claims at issue, and this factor favors approval.

### 5. Opinions of Counsel & Plaintiffs

Fifth, courts consider "[t]he opinion of experienced counsel as to the fairness and reasonability of a settlement[, which] carries 'considerable weight' in determining whether a settlement should be approved." *Pike*, 2019 WL 8138439, at *5 (quoting *Selk*, 159 F. Supp. 3d at 1176). Here, counsel for the parties each have considerable experience in labor and employment matters, including litigation of FLSA actions. (Wu Decl. ¶ 7; McGill Decl. ¶ 7.) They believe the settlement compensation "to each Plaintiff is fair and reasonable, based upon the expert witness's damage calculations,

cost of further litigation, and risk of an adverse verdict at trial." (Mot. 12 (citing Wu Decl. ¶¶ 7, 11; McGill Decl. ¶¶ 7, 12)).) Further, Plaintiffs signed the Settlement Agreement, indicating their approval. (*See* SA at 7–8.) Counsels' and Plaintiffs' opinions that the Settlement Agreement is fair and reasonable weigh in favor of approval. *See Pike*, 2019 WL 8138439, at *5 (finding counsels' experience and approval, and plaintiffs' signatures in agreement, weighed in favor of approval).

### 6. Possibility of Fraud or Collusion

Finally, courts consider "the possibility that the settlement was obtained by fraud or collusion." *Pike*, 2019 WL 8138439, at *5. "The likelihood of fraud or collusion is low . . . [when] the Settlement was reached through arm's-length negotiations, facilitated by an impartial mediator." *Id.* (quoting *Dashiell*, 2018 WL 3629915, at *4).

The parties represent that negotiations have at all times been adversarial, and the record in this case supports this assertion. (*See* Wu Decl. ¶ 12; McGill Decl. ¶ 13.) The parties litigated this matter for more than two years, exchanged extensive discovery, engaged in mediation, and filed cross motions for summary judgment on hotly disputed issues. Only after the Court issued its ruling on the parties' motions for summary judgment and the parties agreed to compromise their positions did they reach an agreement. (Mot. 12.) Additionally, the settlement amounts derive from the expert's calculations, which are based on objective records specific to each Plaintiff. (*See* SA ¶ A.2.A; Expert Report.) This record appears devoid of collusion. *See Selk*, 159 F. Supp. 3d at 1179–80 (finding no evidence of fraud or collusion where two-year litigation included extensive discovery and a summary judgment motion, and the settlement sum was calculated based on employee time records).

Finally, the Settlement Agreement does not include an award of attorneys' fees, but instead requires Plaintiffs to separately move the Court for such an award, which motion the City may oppose. (Mot. 13; McGill Decl. ¶ 10; SA ¶ 5.) This, too, supports a lack of fraud or collusion. *See Pike*, 2019 WL 8138439, at *5 (discussing

that excluding attorneys' fees from the agreement indicated that the Settlement Agreement was not the product of collusion). Accordingly, the Court finds no evidence of fraud or collusion, and this factor also favors approval.

In sum, all factors weigh in favor of approval of the FLSA Settlement Agreement. The Court concludes the Settlement Agreement is a fair and reasonable resolution of a bona fide dispute over alleged FLSA violations. *See Lynn's Food Stores*, 679 F.2d at 1355.

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** the parties' Joint Motion for Approval of FLSA Settlement and Dismissal of Action with Prejudice. (ECF No. 75.) The Settlement Agreement is **APPROVED** as a fair and reasonable resolution of a bona fide dispute. This action is **DISMISSED with prejudice**. The Clerk of the Court shall close this case.

**IT IS SO ORDERED.**

March 16, 2021

_____
                **OTIS D. WRIGHT, II**
         **UNITED STATES DISTRICT JUDGE**